IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Criminal Case No. 16-cr-00370-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DAVID JIMENEZ,

    Defendant.
_____

**ORDER**
_____

This matter is before the Court on the Notice of Appeal [Docket No. 63] filed by defendant David Jimenez. Defendant appeals his conviction of driving under restraint after a jury trial presided over by Magistrate Judge Michael E. Hegarty in Criminal Case No. 16-mj-07009-MEH. The Court exercises jurisdiction over this appeal pursuant to 18 U.S.C. § 3402 and Fed. R. Crim P. 58(g)(2)(D). Neither party requested oral argument.

**I. BACKGROUND**[1]

Defendant works as a subcontractor for a flooring company. Docket No. 72 at 90:15-91:1. On November 3, 2015, defendant and two co-workers drove to Colorado Springs, Colorado for a job. *Id.* at 92:16-96:20. The defendant's driver's license was under restraint so one of his co-workers drove. *Id.* at 94:18-25. At some point during the trip, defendant fell asleep in the back of the van. *Id.* at 95:25-96:10. When he

---

[1]The following facts are drawn from "the record viewed in the light most favorable to the government." *United States v. Matousek*, 131 F. App'x 641, 644 (10th Cir. 2005) (citing *United States v. Lewis*, 240 F.3d 866, 870 (10th Cir. 2001)).

woke up, the van was approaching the Gate 3 entrance to Fort Carson, a federal military reservation in Colorado Springs. *Id.* at 21:13-24, 96:11-97:20. Defendant testified that he got into the driver's seat so he could be the one to speak to the gate guard. *Id.* at 97:7-98:9.

Although defendant indicated that he moved into the driver's seat only after the van was stopped at the gate, *id.* at 99:14-21, Specialist Brian Mathis, who was on duty at Gate 3, testified that he observed defendant drive several car lengths to the gate kiosk. *Id.* at 29:4-30:12. Specialist Mathis asked defendant for identification, proof of insurance, and the vehicle's registration. *Id.* at 31:6-10. He then ran a check on defendant's state identification card, which showed that defendant had a revoked driver's license. *Id.* at 31:21-25. A military police officer, Bruce Punday, arrived and issued defendant a violation notice for driving while under restraint. *Id.* at 67:1-68:17; *see also* Docket No. 1 (violation notice). On May 31, 2016, defendant was charged by information with driving under restraint in violation of Colo. Rev. Stat. § 42-2-138(1)(d), as assimilated by 18 U.S.C. § 13, the Assimilative Crimes Act ("ACA"). Docket No. 9.

Colo. Rev. Stat. § 42-2-138(1)(d) provides:

> A person who drives a motor vehicle or off-highway vehicle upon any highway of this state with knowledge that the person's license or privilege to drive, either as a resident or nonresident, is restrained under section 42-2-126(3), is restrained solely or partially because of a conviction of DUI, DUI per se, DWAI, or UDD, or is restrained in another state solely or partially because of an alcohol-related driving offense is guilty of a misdemeanor and, upon conviction thereof, shall be punished by imprisonment in the county jail for not less than thirty days nor more than one year and, in the discretion of the court, by a fine of not less than five hundred dollars nor more than one thousand dollars.

Pursuant to the statute, one of the elements of driving while under restraint is that the defendant drove "upon any highway of this state." Colo. Rev. Stat. § 42-2-138(1)(d); see also Colo. Jury Instructions, Criminal § 42:03 (2017).

On August 19, 2016, during a hearing on an unrelated matter, the magistrate judge raised the issue of whether the government would have to prove that "defendant drove some distance other than on Fort Carson" in order to establish that he drove on a "highway of this state." Docket No. 70 at 88:13-15.[2] The magistrate judge reserved ruling on the issue in order to give the parties an opportunity to submit further briefing on whether the portion of the road leading to Gate 3 but falling within Fort Carson's jurisdictional boundary qualified as a public highway[3] for purposes of Colo. Rev. Stat. § 42-2-138(1)(d). Id. at 98:10-14. On August 25, 2016, defendant submitted a supplemental brief in support of his motion to dismiss. Docket No. 26. In the brief, defendant argued that, "because Fort Carson is a restricted Federal installation, the roadway in front of the gates is not a 'Public Highway' as defined in the statute." Id. at 1. The government filed a response on August 30, 2016. Docket No. 31. On August 31, 2016, the magistrate judge held a second motions hearing during which he heard argument on the issue of whether the road leading to Gate 3 qualified as a public highway under Colorado law. Docket No. 32. At the hearing, the magistrate judge

---

[2]During the motions hearing, defense counsel argued that the surveillance video would be exculpatory even if defendant drove because it would show that defendant drove only on a portion of the road falling within Fort Carson's jurisdictional boundary, which is a restricted area. Docket No. 70 at 82:23-83:19.

[3]The terms "public highway," "highway," and "highway of this state" are used interchangeably throughout this order.

3

expressed his belief that, under Colorado's definition of "highway," see Colo. Rev. Stat. § 42-1-102(43), a road did not have to be entirely unrestricted to qualify as a public highway. Docket No. 71 at 7:22-8:14. The magistrate judge further noted that the road leading to Gate 3 was "certainly a public road in the sense that public services built it and maintains it" and anyone can access Fort Carson with identification. *Id.* at 8:15-24. Based on this reasoning, the magistrate judge denied defendant's request for an order dismissing the information. *Id.* at 8:25-9:3; Docket No. 32 at 1. Later in the hearing, defendant requested that he be permitted to "present evidence to a jury on the issue of a public highway because it is an element," Docket No. 71 at 19:23-20:1, to which the magistrate judge responded that he was "prepared to hold as a matter of law" that the roadway leading to Gate 3 qualified as a public highway and thus "any evidence relating" to that issue would be impermissible. *Id.* at 20:11-15. Defendant suggested that the court would be "preempting an element of the charge" and explained that he did not raise the issue of whether the road constituted a public highway in his motion to dismiss because he "thought it was a jury question." *Id.* at 20:16-17, 22:5-7. The magistrate judge indicated he would provide further guidance at a later date. *Id.* at 23:21-24.

On September 2, 2016, the government filed a motion requesting that the Court take judicial notice that "Chiles Avenue and Westmeadow Drive are 'highways' that qualify, meet and conform to, (a) the definition of 'highway' set forth in Colorado Revised Statutes Section 42-1-102(43); and (b) the definition of 'highway' required for a conviction of Driving Under Restraint under Colorado Revised Statutes Section 42-2-138." Docket No. 37 at 2. On September 6, 2016, the magistrate judge issued an

4

order holding, as a matter of law, that the road leading to Gate 3 at Fort Carson is a "highway of this state" under § 42-2-138 and barring defendant from presenting any evidence regarding the meaning of "highway of this state" at trial. Docket No. 42 at 1-2.[4]

The jury trial in this case began on September 8, 2016. *See* Docket Nos. 46, 48. At the close of the evidence, the magistrate judge instructed the jury:

> The elements of the crime of driving under restraint are:
>
> > First: that the defendant,
> > Second: in the State of Colorado, at or about the date and place charged,
> > Third: drove a motor vehicle or off-highway vehicle,
> > Fourth: upon any highway of this state,
> > Fifth: when his or her license or driving privilege was under restraint, and
> > Sixth: with knowledge that his driving privilege was under restraint.

Docket No. 50 at 10 (Jury Instruction No. 11). The magistrate judge further instructed:

> The crime of Driving Under Restraint requires proof that Defendant drove a vehicle upon any "highway of this state." I have determined the road leading up to Gate 3 at Fort Carson is a "highway of this state." Therefore, you need not make any findings as to the meaning of "highway of this state."

Docket No. 50 at 16 (Jury Instruction No. 17). The jury convicted defendant of the sole count. Docket No. 51. On November 9, 2016, the magistrate judge held a sentencing

---

[4]The magistrate judge specifically found that the road leading up to Gate 3 at Fort Carson constitutes a "highway" under Colo. Rev. Stat. § 42-1-102(43). Docket No. 42 at 2. Section 42-1-102(43) defines "highway" as "the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel or the entire width of every way declared to be a public highway by any law of this state." § 42-1-102(43). By comparison, a "private road" or "driveway" is defined as "every road or driveway not open to the use of the public for purposes of vehicular travel." § 42-1-102(73).

5

hearing. Docket No. 58. He imposed a sentence of twelve months imprisonment with eight months suspended. *See* Docket No. 60. Judgment entered on November 16, 2016. *Id*. The present appeal followed. *See* Docket No. 63.

## II. STANDARD OF REVIEW

In an appeal from a misdemeanor conviction by a magistrate judge, the "scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D). Thus, the Court reviews "de novo the jury instructions [given by the magistrate judge] . . . to determine if they 'accurately state the governing law and provide the jury with an accurate understanding of the relevant legal standards and factual issues in the case." *United States v. Bedford*, 536 F.3d 1148, 1152 (10th Cir. 2008). The Court "reviews the [magistrate judge's] decision to give or to refuse a particular jury instruction for abuse of discretion." *Id.*

## III. ANALYSIS

### A. The Magistrate Judge's Ruling

On appeal, the parties claim that the magistrate judge took judicial notice of an adjudicative fact pursuant to Federal Rule of Evidence 201 by ruling that the road leading to Gate 3 was a "highway of this state" under § 42-2-138(1)(d). *See* Docket No. 75 at 11; Docket No. 76 at 17. This characterization is logical given the government's pretrial request that the court take judicial notice that Chiles Avenue and Westmeadow Drive qualify as public highways for purposes of Colo. Rev. Stat. §§ 42-1-102(43) and 42-2-138(1)(d). Docket No. 37 at 2. On the other hand, the magistrate judge appears to have understood his ruling to be a legal determination, rather than a

6

taking of judicial notice. *See, e.g.*, Docket No. 71 at 20:11-15 (noting that he was "prepared to hold as a matter of law" that the roadway leading to Gate 3 qualified as a public highway); Docket No. 42 at 1 (holding "as a matter of law that the road leading up to Gate 3 at Fort Carson is a 'highway of this state' under Colo. Rev. Stat. § 42-2-138"). As a general rule, legal conclusions are "not the proper subject of judicial notice." *Mann v. Nationstar Mortg., LLC*, 632 F. App'x 410, 412 (9th Cir. 2016) (unpublished); *see also United States v. Dedman*, 527 F.3d 577, 586-88 (6th Cir. 2008) (distinguishing between judicial notice and court's power to determine applicable law); *Taylor v. Charter Med. Corp.*, 162 F.3d 827 (5th Cir. 1998) (court's finding that party constituted a state actor for purposes of 42 U.S.C. § 1983 constituted a legal determination rather than an adjudicative fact); *Donaldson v. U.S. Dep't of Treasury*, 2018 WL 1116675, at *2 (D. Kan. Mar. 1, 2018) (finding that "interpretations of law and citations to law . . . are not an appropriate application of judicial notice"). Ultimately, the Court need not resolve the issue. As discussed below, whether the magistrate judge took judicial notice of an element of the charge or held as a matter of law that the element was established, he committed reversible error by removing the element from the jury's consideration.

### B. Whether the Magistrate Judge Erred by Failing to Submit an Element of the Charge to the Jury

Defendant argues that the magistrate judge violated his Fifth and Sixth Amendment rights by "[t]aking judicial notice of an elemental fact" – namely, that the road leading to Gate 3 constituted a "highway of this state" for purposes of Colo. Rev. Stat. § 42-2-138(1)(d). Docket No. 75 at 17.

"[T]he Fifth Amendment requirement of proof beyond a reasonable doubt and

7

the Sixth Amendment requirement of a jury verdict are interrelated." *Sullivan v. Louisiana*, 508 U.S. 275, 278 (1993). Together, these provisions "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *United States v. Gaudin*, 515 U.S. 506, 510 (1995).

In order to find defendant guilty of driving under restraint, the jury was required to find the following elements were proven beyond a reasonable doubt:

(1) That the defendant,

(2) in the State of Colorado, at or about the date and place charged,

(3) drove a motor vehicle or off-highway vehicle,

(4) upon any highway of this state,

(5) with knowledge that his license or privilege to drive, either as a resident

or a nonresident, was under restraint due to an alcohol-related driving offense.

*See* Colo. Rev. Stat. § 42-2-138(1)(d); Colo. Jury Instructions, Criminal § 42:03 (2017); *see also* Docket No. 9. With respect to the fourth element, the magistrate judge instructed the jury: "I have determined the road leading up to Gate 3 at Fort Carson is a 'highway of this state.' Therefore, you need not make any findings as to the meaning of 'highway of this state.'"[5] Docket No. 50 at 16. On appeal, defendant argues that this instruction improperly took the fourth element of driving under restraint from the jury in

---

[5]The government concedes that driving "upon any highway of this state" is one of the elements of driving under restraint. Docket No. 76 at 28; *see also People v. Zubiate*, 411 P.3d 757, 766-67 (Colo. App. 2013) (finding that driving "upon any highway of this state" constitutes a necessary element of driving under restraint).

8

violation of the Fifth and Sixth Amendments. Docket No. 75 at 14-17. The Court agrees.

In *United States v. Gaudin*, 515 U.S. 506 (1995), the Supreme Court held that the district court's failure to submit a mixed question of fact and law to the jury violated the criminal defendant's rights under the Fifth and Sixth Amendments. *Id.* at 522-23. The defendant had been charged with multiple counts of making false statements on federal loan documents in violation of 18 U.S.C. § 1001. *Id.* at 508. In order to convict defendant under the statute, the government was required to prove that "the alleged false statements were material to the activities and decisions of [the Department of Housing and Urban Development]." *Id.* at 508. However, the district court instructed the jury that "the issue of materiality . . . [was] a matter for the decision of the court" and that "the statements charged in the indictment [were] material statements." *Id.* The U.S. Court of Appeals for the Ninth Circuit reversed the defendant's conviction and the Supreme Court affirmed, holding that, notwithstanding the district court's power to instruct the jury on the law, the issue of materiality represented a mixed question of law and fact that was inappropriate for judicial resolution. *See id.* at 509, 512-15, 523.

Similarly in this case, whether the road approaching Gate 3 constitutes a public highway within the meaning of Colo. Rev. Stat. § 42-2-138 is a mixed question of fact and law that should have been submitted to the jury for resolution. *See Stanley v. Adams Cty. Sch. Dist. 27J*, 942 P.2d 1322, 1325 (Colo. App. 1997) (using facts established at trial to resolve whether driveway leading to school cafeteria was a public highway); *Curtis v. Lawley*, 346 P.2d 579, 580-81 (Colo. 1959) (relying on evidence that highway was under construction and not open to the public to determine that highway constituted a "private way" under Colorado law).

9

The government asserts that there was no constitutional violation because the magistrate judge correctly instructed the jury that

> [a] judicially noticed fact is one which the Court determines is not subject to reasonable dispute, and which the Court has accepted as being true. You may or may not accept this fact as true. You may weigh it as you would any other evidence.

Docket No. 76 at 28; Docket No. 50 at 5.[6] As noted above, it is not clear from the record that the magistrate judge took judicial notice. However, even if that is an accurate characterization of his ruling, the instruction is not curative. The language cited by the government was taken from jury instruction number 6, which lists three judicially noticed facts:

> (1) All land within the jurisdictional boundary of Fort Carson Military Reservation is Federal Land, (2) All crimes and/or misconduct committed on Fort Carson Military Reservation are subject to federal prosecutorial jurisdiction, and (3) The Gate 3 location at Fort Carson Military Reservation connects to the city of Colorado Springs, Colorado via Chiles Avenue, which is an extension of Westmeadow Drive.

Docket No. 50 at 5. Although instruction number 6 made clear that the jury was free to accept or reject any of these three facts, the magistrate judge's determination that the roadway approaching Gate 3 constituted a public highway was communicated to the jury via instruction number 17. *See* Docket No. 50 at 16. That instruction informed the jury that it did not need to "make any findings as to the meaning of 'highway of this state.'" *Id.* Viewed as a whole, the Court finds that these instructions were misleading

---

[6]"In a criminal case, the court must instruct the jury that it may or may not accept the noticed fact as conclusive." Fed. R. Evid. 201(f). "A trial court commits constitutional error when it takes judicial notice of facts constituting an essential element of the crime charged, but fails to instruct the jury according to Rule 201." *United States v. Mentz*, 840 F.2d 315, 322 (6th Cir. 1988).

10

as to the jury's ability to independently determine whether the road approaching Fort Carson constituted a "highway of this state." *See Bedford*, 536 F.3d at 1153-54 (reviewing instructions as a whole to determine whether they were misleading to the jury).

### C. Whether the Magistrate Judge's Error Was Harmless

Given the Court's conclusion that the magistrate judge erred by failing to submit the fourth element of the charge to the jury, the Court must determine "whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *United States v. Little*, 829 F.3d 1177, 1183 (10th Cir. 2016); *see also Neder v. United States*, 527 U.S. 1, 9-10 (1999) (holding that "the omission of an element is subject to harmless-error analysis"); *Chapman v. California*, 386 U.S. 18, 24 (1967) ("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."). "It is well-established that the burden of proving harmless error is on the government." *United States v. Holly*, 488 F.3d 1298, 1307 (10th Cir. 2007).[7]

---

[7]The government argues that plain error review applies instead of constitutional harmless-error review because defendant did not raise the Fifth or Sixth Amendment arguments below. Docket No. 76 at 26. The Court disagrees. At the August 31, 2016 motions hearing, defendant argued that the court would be "preempting an element of the charge" by holding, as a matter of law, that the road leading to Gate 3 constituted a public highway for purposes of Colo. Rev. Stat. § 42-2-138. Docket No. 71 at 20:16-17, 22:5-7. After the close of the evidence, defendant renewed his "objection on the Court essentially taking the element of a highway away from the jury by finding as a matter of law that it was a highway." Docket No. 72 at 121:1-3. Although defendant did not specifically cite the Fifth or Sixth Amendments in challenging the magistrate judge's decision to take the fourth element away from the jury, the Court finds that defendant's objections were sufficient to preserve the constitutional issue for appeal. *See United States v. Minners*, 362 F. App'x 931, 938 (10th Cir. 2010) (unpublished) (holding that, although defense counsel "did not explicitly state that his client's Sixth Amendment right

The government argues that the magistrate judge's instruction as to the fourth element was harmless because "there was no actual dispute regarding whether the roadway between the jurisdictional boundary marker and the security checkpoint was within the federal enclave, yet open to the public." Docket No. 76 at 29. While the government may be correct that there was no dispute as to the facts underlying the magistrate judge's determination of the fourth element, the government cannot show beyond a reasonable doubt that the jury's verdict would have been the same absent the magistrate judge's error.

Colo. Rev. Stat. § 42-1-102(43) defines "highway" as "the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel or the entire width of every way declared to be a public highway by any law of this state." In contrast, a "private road" or "driveway" is "every road or driveway not open to the use of the public for purposes of vehicular travel." Colo. Rev. Stat. § 42-1-102(73). Thus, under Colorado law, the principal distinction between a public road and a private road is the extent to which the road is open for public use. *See Curtis*, 346 P.2d at 581 (finding that road was not a public highway based on evidence that (1) it was under construction and not open to the public; (2) engineering company was actively trying to keep the public off of the

---

to confront was being violated by the admission of testimonial evidence," he properly preserved Confrontation Clause objection for appeal where he "object[ed] and [made] at least one reference to his inability to cross-examine the witness when the government sought to play the 911 recording to the jury"). The government also argues that defendant has waived his constitutional arguments by failing to develop them in his appellate brief. Docket No. 76 at 18. But defendant provides sufficient argument and legal authority to allow the Court to consider his claim on appeal. *See* Docket No. 75 at 17.

project; and (3) the west lane was being used by employees of the State Highway Department in connection with the construction). Courts applying similar statutory definitions of "highway" have considered various types of evidence in determining whether a road is open for public use, such as signs restricting public access to the road, rules restricting access to certain classes of persons, and limitations on the purposes for which access will be granted. *See, e.g.*, *United States v. Hill*, 473 F.3d 112, 115 (4th Cir. 2007) (affirming district court's finding after bench trial that road leading to gate of Navy base constituted public highway under Virginia statute defining "highway" as "entire width between the boundary lines of every way or place open to the use of the public for purposes of vehicular travel," based on evidence that (1) "any person, without restriction, is allowed to proceed down Nider Boulevard up to the actual check point at Gate 4 and then turn around in the cut-through median"; (2) "any person visiting [the medical clinic] may travel on [road] to access the entrance and parking lot to [the clinic]"; and (3) "no signage was posted on or near the stretch of Nider Boulevard between Gate 4 and Shore drive restricting public access to such stretch of road"); *United States v. Smith*, 395 F.3d 516, 520-21 (4th Cir. 2005) (reversing conviction on ground that access road to CIA was not a public highway under Virginia law because signs along road stated that only CIA employees and those with authorized business were allowed to enter); *United States v. Patrick*, 2006 WL 83505, at *1, *3, *5, *8 (D. Md. Jan. 12, 2006) (granting judgment of acquittal after bench trial based on finding that roads on National Institutes of Health enclave did not constitute "highways" under Maryland statute defining "highway" as "the entire width between the boundary lines of any way or thoroughfare of which any part is used by the public for vehicular travel,"

13

where access to enclave was a "privilege" and restricted to those with a "bona fide purpose").

Here, the government presented no evidence at trial from which the jury could have found that the road leading to Gate 3 was open to the use of the public. Although Officer Punday testified that the road leading to Gate 3 is the only road connecting Gate 3 to Colorado Springs, Docket No. 72 at 66:13-17, Specialist Mathis explained that "the public road leading onto gate 3 itself" – Westmeadow Drive – "turns into Chiles [Avenue] once you enter Fort Carson territory." Docket No. 72 at 25:11-15. Neither officer provided clear testimony regarding the extent to which the general public is permitted to enter Fort Carson through Gate 3. Officer Punday testified that "[e]verybody can use gate 3," but did not clarify what he meant by "everybody." *Id.* at 66:1. Specialist Mathis stated only that Gate 3 is mainly a commercial gate with one lane designated for people with a Department of Defense ID. *Id.* at 36:18-23.

Defendant also presented evidence at trial indicating that the road approaching Gate 3 was subject to access restrictions. Defendant introduced a photograph showing a "Restricted Area" sign to the left of the road where Westmeadow Drive turns into Chiles Avenue as it crosses Fort Carson's jurisdictional boundary. *See* Docket No. 48-2 at 3; *see also* Docket No. 72 at 39:14-22, 41:4-6. The sign states: "This (installation, activity, etc.) has been declared a restricted area by authority of the commanding general or commanding officer in accordance with the provisions of the directive issued by the Secretary of Defense . . . . Unauthorized entry is prohibited." Docket No. 48-2 at 3. Specialist Mathis testified that the photograph accurately reflected the way Gate 3 would have looked on November 3, 2015. Docket No. 72 at 40:12-14. He further

stated that, during 100 percent ID checks, officers will ask a person approaching Gate 3 for identification even if the person only wants to turn around. *Id.* at 56:6-11. Specialist Mathis testified that Fort Carson was doing a 100 percent ID check on November 3, 2015. *Id.* at 56:12-13. Accordingly, although defendant asked if he could turn around when he reached the checkpoint, Specialist Mathis was required to inspect defendant's vehicle and identification. *Id.* at 31:6-17.

Under the constitutional harmless-error standard, the question is not whether the evidence presented at trial is sufficient to support the defendant's conviction, but whether the evidence "so overwhelmingly support[s] the [elements of the charge] as to make the error harmless beyond a reasonable doubt." *United States v. Holly*, 488 F.3d 1298, 1310-11 (10th Cir. 2007); *see also United States v. Ellis*, 868 F.3d 1155, 1173 (10th Cir. 2017) (distinguishing between constitutional harmless error and sufficiency of the evidence). This standard has not been met here. Given the paucity of evidence showing that the road leading to Gate 3 was open for public use on November 3, 2015, the government cannot demonstrate that the magistrate judge's error in removing the fourth element from the jury's consideration was harmless beyond a reasonable doubt. Defendant's conviction must therefore be reversed.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's conviction is **REVERSED**. It is further

**ORDERED** that this case is **REMANDED** for further proceedings.

15

DATED June 22, 2018.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge